UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-157-GWU

SUE MCQUEEN, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Sue McQueen brought this action to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that McQueen, a 41-year-old former certified medical assistant with a high school education, suffered from impairments related to a history of mitral valve replacement in 1998, a bipolar disorder, an anxiety disorder with a probable obsessive compulsive disorder, and a history of alcohol abuse in reported remission. (Tr. 17, 21). The ALJ determined that the plaintiff retained the residual functional capacity to perform a restricted range of light level work despite her impairments. (Tr. 18). While the claimant's past relevant work could not be performed, the ALJ found that a significant number of other jobs remained available, and, so, she could not be considered totally disabled. (Tr. 22-23). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 22).

After review of the evidence presented, the undersigned finds that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Jackie Rogers included an exertional restriction to light level work restricted from a full range by a

limitation to routine and repetitive tasks, object-focused rather than people-oriented, and involved low stress environments. (Tr. 565). In response, the witness identified a significant number of jobs in the national economy that remained available including such positions as light cleaner (917,000 jobs), machine operator (1,900,000 jobs) and office helper (700,000 jobs). (Id.). Therefore, assuming that the vocational factors considered by Rogers fairly characterized McQueen's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the court finds no reversible error. Such treating and examining sources as the staff at Cardiology Associates of Kentucky (Tr. 173-217, 304-308) and the staff at the University of Kentucky Medical Center (Tr. 310-382) did not identify the existence of more severe physical restrictions than those found by the ALJ. Dr. Amanda Lange reviewed the record and opined that McQueen retained the ability to perform light level work, restricted from a full range by an inability to more than occasionally climb ramps and stairs, a need to avoid concentrated exposure to temperature extremes and a need to avoid moderate exposure to dusts, odors, gases and poor ventilation. (Tr. 276-284). The ALJ did not include these non-exertional restrictions in the hypothetical question. However, the plaintiff has not argued that their omission was reversible error. Furthermore, a review of the

Dictionary of Occupational Titles (DOT) indicates that these restrictions would not preclude performance of the jobs cited by Rogers.[1]  Therefore, any error in the omission of the non-exertional limitations indicated by Lange would be harmless.

The ALJ dealt properly with the evidence of record relating to McQueen's mental condition.  Psychologist Kenneth Starkey examined the plaintiff and diagnosed alcohol dependence in partial remission and an alcohol-induced mood disorder.  (Tr. 245).  Her Global Assessment of Functioning (GAF) was rated at 61.  (Id.).  Such a GAF suggests the existence of only "mild" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  The examiner indicated that her symptoms would not produce more than "mild to moderate" impairment of social and occupational functioning with relating to others in a collaborative and cooperative fashion and tolerating the stressors and pressures of daily work activity, the most affected areas.  (Tr. 244-245).  The hypothetical factors were consistent with these restrictions.  Starkey later indicated that treatment of her alcohol abuse and other psychological problems could render her ready for vocational rehabilitation and placement within three months.  (Tr. 245).  The court notes that since these restrictions related to alcohol abuse, Public Law 104-121 precludes

---

[1] See DOT number 323.687-014 for cleaner, DOT number 653.662-010 for machine operator and DOT number 239.567-010 for office helper.

considering them if they would be material to finding of disability. Therefore, Starkey supports the administrative decision.

Dr. Fiona Doherty, a treating psychiatrist, opined that McQueen's mental problems disabled her from all employment. (Tr. 219, 275). The ALJ rejected this opinion because Dr. Doherty failed to identify specific psychological limitations and her treatment notes did not indicate a totally disabling mental impairment. (Tr. 21). The administrative regulations provide that the finding that a claimant is "disabled" is reserved to the Commissioner and such an opinion from a medical source is not binding on the administration. 20 C.F.R. § 404.1527(e)(1). Therefore, Dr. Doherty's opinion was properly rejected.

Psychologists Edward Stodola (Tr. 262-263) and Ed Ross (Tr. 300-301) each reviewed the record and opined that McQueen would be "moderately" limited in such areas as carrying out detailed instructions, maintaining attention and concentration for extended periods, working in coordination with or proximity to others without being distracted by them, completing a normal workday and workweek without interruption from psychologically-based symptoms and performing at a consistent pace without an unreasonable length and number of rest periods, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and responding appropriately to changes in the work setting. These are more severe mental restrictions than

those found by the ALJ. These restrictions would be outweighed by the opinion of Dr. Starkey, an examining source, since the administrative regulations provide "generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). Furthermore, the plaintiff has not argued that the ALJ erred in rejecting these limitations as binding.

McQueen asserts that the ALJ did not properly consider the combination of her impairments. However, the court has already determined that the hypothetical factors fairly depicted the plaintiff's condition. Therefore, the ALJ implicitly considered all of her impairments in combination and the court must reject the claimant's argument.

McQueen also argues that her medical problems would prevent her from maintaining employment and, so, she could not meet the durational requirements for substantial gainful activity. The plaintiff cites the Ninth Circuit Court of Appeals case of <u>Gatliff v. Commissioner of Social Security</u>, 172 F.3d 690 (9th Cir. 1999) in support of her argument. However, in <u>Gatliff</u>, the record contained considerable evidence that the claimant would not be able to maintain employment more than a couple of months and the ALJ had even acknowledged this fact. <u>Gatliff</u>, 172 F.3d at 692. In the present action, McQueen has not identified similar evidence

suggesting that she would not be able to maintain employment. Therefore, the court must reject the plaintiff's argument.

The court notes that McQueen submitted several additional medical records to the Appeals Council which were never seen by the ALJ. These records included an assessment form from Dr. Doherty dated May 8, 2008 (Tr. 387-390), a hospitalization report from St. Joseph Hospital dated July, 1998 (Tr. 404-409), a hospitalization report from the University of Kentucky Hospital dated April, 2000 (Tr. 410-418), treatment notes from Lexington Behavioral Medicine dated between June of 2004 and August of 2005 (Tr. 419-471), treatment notes from the Kentucky Medical Services Foundation dated from February of 2006 and November of 2006 (Tr. 472-476), treatment notes from the Cumberland River Comprehensive Care Center dated from October of 2008 through September of 2009 (Tr. 477-510), treatment notes from the White House Clinic dated from February of 2009 through February of 2010 (Tr. 511-537), and a report from Dr. John Allahham dated December of 2009 (Tr. 538-541). This action raises an issue concerning a remand for the taking of new evidence before the Commissioner. <u>Cotton v. Sullivan</u>, 2 F.3d 692 (6th Cir. 1993).

A court may order additional evidence be taken before the Commissioner, " . . . but only upon a showing that there is new evidence to be taken which is material and there is good cause for the failure to incorporate such evidence into

the record in a prior proceeding . . . ." 42 U.S.C. § 405(g).  The statute provides that a claimant must prove that the additional evidence is both "material" and that "good cause" existed for its not having been submitted at an earlier proceeding.  <u>Sizemore v. Secretary of Health and Human Services</u>, 865 F.2d 709, 710 (6th Cir. 1988).  In order to demonstrate "materiality," a claimant must show that a reasonable probability exists that the Commissioner would have reached a different conclusion if originally presented with the new evidence.  <u>Sizemore</u>, 865 F.2d at 711.  Thus, the new evidence must be "material" and "good cause" must be shown why it was not previously submitted.

McQueen makes no argument with regard to either "good cause" or "materiality" with regard to the additional medical evidence with the exception of Dr. Doherty's May, 2008 assessment.  Thus, none of these documents satisfy the requirements for a remand of the action for further consideration of new evidence.

With regard to Dr. Doherty's assessment, the court notes that this document contains a number of severe, specific mental limitations with McQueen's ability rated as either "poor" or "none" in a majority of areas of functioning. (Tr. 389). The plaintiff asserts that this opinion from her treating mental health professional would be binding on the ALJ and render her totally disabled.  Thus, the "materiality" requirement for a remand of the action is satisfied.  She asserts that since this document was not in existence at the time of the ALJ's final decision on March 26,

2008, "good cause" exists for her failure to submit it to the ALJ.  However, while the record was not in existence at the time of the denial decision, such, by itself, does not satisfy the "good cause" test and a valid reason for failure to obtain the evidence must still be shown.  <u>Oliver v. Secretary of Health and Human Services</u>, 804 F.2d 964, 966 (6th Cir. 1986).  The claimant has provided no reason why this assessment from the treating source could not have been obtained in a timely fashion.  Since the "good cause" requirement is not met, the court has no need to address the issue of "materiality."   Therefore, the court must reject McQueen's argument and a remand for the taking of new evidence before the Commissioner is not required.

After a review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 9th day of February, 2011.

**Signed By:**
<u>**G. Wix Unthank**</u>
**United States Senior Judge**